Mr. Richards. Thank you, Your Honor, and may it please the Court. My name is Stephen Richards, and I represent the two plaintiffs in this case and the two appellants, Sean Roberts and Stephen Hill. I'm sure this situation arose from the Lewis litigation, Lewis v. City of Chicago, where a class of people was designated that the fire department had to hire. And the process was as follows. First of all, it began with 6,000 people who were in the class. Then they were screened by both two methods. One was a lottery to get 111 people, and the second method was a Sean Roberts and Stephen Hill had fairly high lottery numbers once you take into account that a lot of people with lottery numbers that were higher dropped out because they couldn't meet the first part of the test. By higher, you mean lower? Exactly. I guess higher would be better or lower would be better depending on what you want. For example, Sean Roberts was 46 among the 111, so he's a square in the middle. We're not sure of the exact number for Stephen Hill, but since his first number was 180 and Sean Roberts was 302, he must have been even better. He must have been way near the top. So that's the way the process started, and the last step was a medical screening. Now, the way this was conducted, we think, violated both their rights with respect to disability, and this is the reason. The last step was a medical screening, but it was a medical screening. First of all, January 5th, they were both told, you know, you're good except for the medical screening. Not until over six weeks later, February 22nd, did they get a notice saying, come for your test or come for your medical screening. One of them does the screening on the 24th, one of them does the screen on the 27th. This is very, very close in time to when the first class is due to be hired, which is March 16th. A week later, about a week later, both of them hear, we've got some issues. There's some things you got to take care of. So again, this is within a week or two weeks of the first class being hired. With respect to Sean Roberts, some of your pulmonary tests have to be redone. We have to get something more because we think there's bronchitis involved. With respect to Stephen Hill, they said there were some numbers that had to be repeated on a blood test, and he wasn't clear, and we don't have information on what that was, but he did repeat them. The other requests were, we think, unreasonable given the period of time. He was asked to get medical for gallstones and some other things. They were given extremely short time frames to complete these requests. Now I should say, with respect to the upshot was that Sean Roberts was never invited to either of the training classes. For Stephen Hill, he was told, although he was one day late on getting his last piece of paper, he got it on the day after the first training class started, he was told, according to the complaint, that listen, you're still good, we've still got places for you, just get it done. And he did. He was one day late getting that last piece of paper. There was another training class, a second training class about to begin, I believe on the 25th, but for some unknown reason by the complaint, by what we think the testimony would be if we ever got to trial. Not until April 2nd does the employer come back and say, oh by the way, you're medically qualified, you're fine. But too bad, the training classes had started. So the question is, is this entire sequence of events, does this state a claim for discrimination under the Disability Act? Let me deal with what the appellee's arguments are, I think, in order. One argument I think they have is that we have to show but-for causation. And frankly we agree, and I don't think it matters, I think it's an academic dispute as to whether the recent changes in law eliminate but-for causation. Clearly, the but-for causation is clear. If they had not had these either medical conditions or at least medical conditions perceived by the employer to be possible disabilities, they would have sailed through. They were way up there. They had passed all the tests and their lottery numbers placed them well within the 111. They would have had no problem. Did both your clients ultimately get the medical approval? Shawn Roberts did not in fact get the medical approval, that's not a complaint, although if we went to trial we would dispute as to whether that was reasonable. Stephen Hill, according to the complaint and according to the truth, did. He received a letter on April 2nd saying, you're fine, you're medically clear, you have no problem. So, in terms of, I think the argument of the defendants, as far as I can understand it, is in a couple parts. One, I think I've dealt with but-for causation. The second part is basically that there's no intentional discrimination because, after all, it was a rushed process. They had to comply with a court order. People with disabilities may have gotten the shaft, but who cares? That's just the way it happened. I don't think that argument is consistent with the act and there is also intentional conduct because Shawn Roberts and Stephen Hill are not requesting these additional tests. They're not saying, by the way, we're disabled. Stephen Hill in particular says, I'm doing great. I have asthma but I run marathons and these injuries are old. I'm medically qualified. But because at least the employer perceives him to have a disability, which is sufficient under the act, he is subject to these reasonably accomplished within that period of time and then, without explanation, he's denied a position in the second training class even though he's medically qualified. So, we think those facts state a claim. Well, there's a step in your logic that I'm not sure I'm fully persuaded and that is that medical testing itself does not violate the Americans with Disability Act. No, it does not. I think that was the next issue I was about to address. And so, the fact that they required the test doesn't suggest that they're discriminating on the basis of disability. And so, I wonder if we can leap to the conclusion that they're perceived as having a disability just because they were required to undergo some medical testing and it took some time to get the results back. Because ultimately, it seems to me, they didn't perceive Mr. Hill as having a disability at all. Ultimately, but too late. And they initially did because they required further testing. I mean, the first medical screening was something presumably everyone went through. I guess that's the step that I'm not quite told on. The first level of medical testing is something everyone went through and we do not deny that an employer has a right, particularly in this institute, to do medical testing. We do think that the timing and the till February 22nd to inform that they need to go to the doctor when the class was going to be hired on March 16th would, by its nature, disadvantage people who have conditions which might need further investigation, which apparently was the case with these two. So, that's number one. Number two, it's true that the Act does provide specifically that an employer has a right to do medical testing. It doesn't have to give a business justification. I think the reason for that, if you look at the whole context of the Act, is Congress wanted to encourage employers to be kind of medically active. If they thought there was a problem with an employee of some sort, to get medical testing to make sure that everything was kosher. However, in this particular, I don't believe that that means that any medical testing of any sort imposed on a person with a disability under the Act is necessarily reasonable. I mean, let's say, for example, there was an employee already hired and the employer said, well, you have a condition, get a CAT scan every day. I think there would at least be a question under the Act of whether that was a reasonable requirement as to medical, as to a medical intervention. In this particular case, it's the requirement of doing this very fast examination and inquiry in combination with the deadline on getting into the class. First, the delay on putting them through the last step in the process. Then, the further request, which we think violates the Act, at least requires that this case go further on into discovery. I was just going to ask, isn't the desperate rush, though, imposed by the courts, I mean, this is not, clearly not a prototypical case of discrimination. They were in a desperate rush because they had this court order to get these people hired and get them on the job. So, there's some plausibility to the idea that they weren't discriminating, they were just trying to comply with the court order and it was a mad dash. Well, I was going to say that the situation is unique, but I don't think the fact that the of the requirements on disabilities. There are factual questions. Why the gap from January 5th to February 22nd, for example, which disadvantaged my clients? Why was Hill not taken in the second class, although he's obviously qualified to be in the second class? These are all factual questions which eventually should go at least before a judge on summary judgment, but certainly, eventually before a jury. Mr. Richards, I just want to make sure I understand. Is it your position that there's some question about the need for the extra testing, the additional medical testing? Yes, there's some of it. I mean, for example, requiring him to get, in a case where he says, you know, I had a hernia 25 years before, they say, okay, you have five days to get 25-year-old medical records. Not reasonable. Not reasonable whatsoever, in our view. So it's the time constraints, not the idea of seeking additional medical information. Correct. Correct. I think it's the time constraints, and there were options available. They could have gone back to the court and said, we need to extend this or whatever, or they could have organized themselves better. So for example, on January 5th, when these two people had gone through the stages, they could have said, yeah, you know, go for a doctor next week, not waiting six weeks. By the way, I think the defense mentions their idea that maybe it had something to do with a rolling process or an order in which the lower-numbered people, to use the right terminology, were getting the medical screening first. But that's not in the record, and that's not in the complaint, and I'm not so sure that's true. In any event, that would be a question for further proceedings, not this one. Who is administering the consent decree? What district judge? The defendant, I'm sure, will be able to supply it, but the name is escaping me at the moment. Actually, if I look... We can find it one way or another, don't worry. Yes, you can find it one way or another. And I would also say that since it was a class action, my clients were in the position of being, you know, they had no independent voice in some of these issues. They were decided by the class representatives. Well, I guess, though, on the question of the medical exam, it's hard to think of a position with the city that would... where the most demanding tests would be needed would be in the area of this type of employment. Would you agree? Um, I would absolutely agree, but I think it is a tragedy that, for example, Stephen Hill, a man who could run marathons, was not able, and will never be able, because of the time he and his age to become a firefighter. And I think that's because he had these medical conditions which triggered this inquiry, delayed him, and therefore deprived him of his rights. Thank you. Good morning, Your Honors. It's still the morning, and may it please the Court. The consent decree, I believe, was administered by Judge Gottschall, who's a judge presiding over the Lewis class action. And certainly our position is that the major problem with the plaintiff's amended complaint is that it makes allegations, in a sense, like counsel right now ask questions, but then the complaint itself provides answers to those questions. And specifically, as the district judge, you know, in this particular case, ruled, plaintiffs just do not sufficiently allege causation. Indeed, their own complaint alleges other non-discriminatory causes for why the city did not hire Mr. Hill and Mr. Roberts to start training at the fire academy. And the plaintiffs do not set forth enough factual matter in their amended complaint to create a plausible inference of either disparate treatment, intentional discrimination by the city against them on the basis of their disabilities or disparate impact. With respect to intentional discrimination, all that the plaintiffs plead at the most is a correlation between the medical conditions that they had and the city's decision not to hire them as a part of 111 people from the Lewis class. Now, just quickly addressing the allegedly open factual issues about hernia and kidney removal that it was unreasonable request, well, it's kind of like a false factual question here because actually these two releases were submitted by Mr. Hill by the deadline. Mr. Hill alleges in his complaint that he was told to provide all the additional information by the deadline of March 15th. He did submit those two releases, so they resulted in incompleteness of his medical examination file by March 15th. It's the pulmonary release that he alleges and his counsel again repeated this morning that was submitted one day late. And the causation, the non-discriminatory cause that the plaintiff allege here is that they just didn't submit all the documents on time. At the time, by the deadline when the city had to final employment offers and that deadline was set as a part of the Lewis injunctive order, as a part of the Lewis class, the city didn't have enough information about both plaintiffs to make a decision whether they qualified for the position of the firefighters or not. And that was the immediate non-discriminatory cause for the no hire decision. Now, to be sure this non-discriminatory cause is correlated potentially with their medical conditions. It took them longer to provide, you know, these documents because they had medical conditions. And actually by that time the city didn't know whether those medical conditions were disabilities or not. It took them longer, but all we have here under this cause decision in Matthews is a positive correlation, not direct causation, and the mere correlation between medical conditions and the adverse employment action is not sufficient as a matter of law to constitute discrimination because of the disability. Now, with respect to, and there are other factual allegations in the plaintiff's complaint that negate an inference of subjective discriminatory intent on behalf of the city to discriminate against the plaintiffs on the basis of disability. An intentional discrimination theory does require the subjective motivation to discriminate against them. There was no subjective motivation because the city was following the requirements of the injunctive order. In the injunctive order, the council stated that it's not, you know, something that the court could concede at this point. We submit that it absolutely is. It's a matter of public record. You know, it's a part of the docket in the, you know, Lewis class section and plaintiffs specifically mention this order in their complaint, in the amended complaint in this case. So the terms of the order are absolutely fine for this court to consider in ruling on this matter. The terms of the injunctive order are very specific. They leave virtually no discretion on behalf of the city in the way it was making decisions which people to, you know, choose from the randomized list of the candidates in to extend final employment offers to admit them to the fire academy. The injunctive order is extremely specific. It does, in section three, address the order in which class members were and the fire department had to extend the first offers to advance to class members on the randomized list in the order that the names exist on that list. And the city shall continue extending offers to class members to advance to the next steps of the hiring process until there exists a pool of at least 111 class members. And again, subsection four of the injunctive order specifies the exact method by which city had to extend the final offers of employment. It states that within 190 days after enter of this order, so there was a particular date certain by which those offers had to be made, the first 111 class members to undergo the four steps of the hiring process and to pass all of them shall be offered employment. The city shall continue making offers of employment to class members pursuant to this order until 111 class members have accepted such offers. So on that date certain when the city had to make the decision who is going to start the fire academy and who is not, the city had to go down the rank order and to see is this person the one who completed all four steps of the hiring process. And unfortunately plaintiffs by that time did not complete the full step and so city had to jump over to the next person in the rank order. So your position that because the court order mandated this procedure even if it happened to fall precisely onto those candidates who were perceived as disabled, the city had no choice and had to do it anyway. And so that's a non-discriminatory reason because of the compulsion of the court order. Well I mean whether the people were perceived as disabled I mean we would actually take an issue with that, but our position is that the fact that the city had to order the had to had to follow the injunctive order negates two elements of the plaintiff's cause of action. First it negates causation because the immediate cause was it was not our intent to discriminate, it was we were following the order. And second it negates intent and causation. And actually the plaintiffs themselves identified multiple factors that were at play and which resulted in the short amount of time that they had to submit their documents which is one is the rank order. I mean it was not the rank order was decided by a lottery it was a game of chance no one really had control over how high they would have been on the on the how low how high they would have been on the randomized list. Presumably if they were higher on the randomized list they would have had more time to submit the documents and Mr. Hill actually would have been admitted to the randomized order and that was one of the reasons. And actually you know the plaintiffs they draw a false analogy you know between people who didn't have medical conditions and were not asked for additional information. I mean it's a false analogy because you know the statute expressly allows any employer including public employer like the city to request additional information from people and those requests actually are not even limited by business necessity they don't have to be even job related as long as three conditions are satisfied and nowhere in their complaint plaintiffs allege that those three conditions were not satisfied. So first all entering employees had to be subject to this medical examination and they were all subject under the Lewis order. Second information has to be kept confidential there is no allegation it should not be used in a discriminatory fashion and here the results were not known at the time when the decisions were made. But this the setup is that if you're a candidate who has to undertake the follow-up medical examination your chances of getting hired are almost nil regardless of what the results are. Everybody was asked to I'm not quite sure what's meant by follow-up examination everybody was taking one medical examination within the scope of that medical examination a contractor hired by the city you know doctors they certainly had medical discretion to decide based on the applicant's medical histories. A perfectly healthy candidate would sail through and the test would be done right away but if I were a person with asthma say there would have to be follow-up to get a pulmonary release and the fact that that additional effort would take additional time dramatically decreases my chance of getting hired. Well and it's legal under the ADA it is absolutely legal to ask a person for additional medical information based on their history so it is not it's legal to ask yes but the question is if the request itself ends up precluding employment that's the problem. Then the employment is precluded by non-discriminatory cause that they didn't didn't submit their documents in time and I would I would submit that the more appropriate comparison here would be between candidates who were late in submitting their documents for some non-disability related reason and the plaintiffs who were late because of their medical conditions. If anybody was late in submitting documents regardless of whether or not they had disability they would not have been picked for the training academy. Thank you, Mr. Richard your time has expired but you may have two minutes. Well I don't think I have much to add I would say that we would not concede that the consent order or whether the consent order could have been modified or how it could be modified is an issue it should be resolved on the pleadings. I think that's an issue for a later point and I think that and our position that later point should be reached. Thank you. All right thank you Mr. Richard thanks to all counsel the case is taken under advisement.